IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00996-WDM

DIANE L. PEREZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Miller, J.

Claimant Diane L. Perez (Perez) appeals a final administrative decision by defendant Michael J. Astrue[1] (the Commissioner) finding that she is not disabled within the meaning of the Social Security Act.

### Background

Perez was born in 1962 and has the equivalent of a high school education. Her past relevant work includes jobs as a dishwasher, cook's helper, kitchen helper, fast food worker, cashier, fast food cook, teacher's aide and housecleaner.

1.    Procedural History

On February 25, 2003, Perez submitted an application to the Social Security

---

[1] This case was originally brought against JoAnne B. Barnhart in her official capacity as Commissioner of Social Security, but on February 12, 2007, Michael J. Astrue became the new Commissioner. Therefore, pursuant to Fed. R. Civ. P. 25(d)(1) he is automatically substituted as a party and this case will proceed in his name.

PDF Final

Administration for disability insurance benefits claiming she became disabled as of February 2003. After this application was denied on initial review, she requested and received a hearing before an Administrative Law Judge (ALJ). Following this hearing held May 10, 2005, the ALJ issued a decision finding that Perez is not disabled because she retained the residual functional capacity (RFC) to work as a cleaner, housekeeper, sweeper, or commercial cleaner. The Social Security Appeals Council declined review of the ALJ's decision, making it the final decision of the Commissioner for review in this court.

2.  <u>Medical History</u>

Perez's impairments are primarily psychological. She has a long history of difficulty with severe anxiety. In March of 2001, Dr. Warren Johnson, M.D., her treating physician, first prescribed medication for this anxiety. This treatment was relatively successful, and Perez noticed a marked decrease in anxiety attacks, and reported minimal symptoms for about two years. In February of 2003, Perez went to see Dr. Johnson with what he described as a "vague" complaint about a past diagnosis of Meniere's disease. Dr. Johnson reported increased symptoms related to anxiety and a recent domestic violence incident, and diagnosed Perez with an anxiety disorder, a possible bipolar disorder, and possible Meniere's disease. At this time, Perez declined any treatment or medication.

On March 30, 2003, Dr. Margot Bradley Psy.D., admitted Perez to a hospital after her mental condition further deteriorated and she began making suicidal threats. At check-in, Dr. Bradley assigned a Global Assessment Functioning (GAF) score of

30.[2] After a few weeks in the hospital with therapy and medication, Dr. Bradley discharged Perez on April 16, 2003 with a diagnosis of schizoaffective disorder and an improved GAF score of 45-50.[3]

On June 10, 2003, Dr. Patti Snodgrass, M.D., performed a psychiatric evaluation of Perez, assigned a GAF of 50-55,[4] and diagnosed schizoaffective disorder and bipolar type with a history of post-traumatic stress disorder and alcohol abuse. Later, in November 2003, when Perez was discharged from Dr. Snodgrass's care, Dr. Snodgrass assessed her GAF rating at 61[5] and gave Perez a discharge diagnosis of schizoaffective disorder.

On November 6, 2004, Dr. Timothy Cuchich, M.D. performed a consultative psychiatric examination in connection with Perez's application for disability benefits.

---

[2] A GAF is the physician's subjective judgment of the patient's overall level of functioning. *Langley v. Barnhart*, 373 F.3d at 1122, n.3 (10th Cir. 2004). GAF's are based on a scale from 1 to 100, *id.*, and "a GAF level of 30-40 is defined as some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," *Schwarz v. Barnhart*, 70 F. App'x 512, 517 (10th Cir. 2003) (internal quotation, emphasis, and alterations omitted).

[3] A GAF score of 45-50 indicates "serious symptoms or serious impairment in social, occupational, or school functioning." *Schwarz*, 70 F. App'x at 517 (internal quotations omitted).

[4] "A GAF score of 51-60 indicates moderate symptoms, such as a flat affect, or moderate difficulty in social or occupational functioning." *Langley*, 373 F.3d at 1122 n.3 (internal quotations omitted).

[5] "GAF scores between 61 and 70 reflect mild symptoms, with some difficulty in social and occupational functioning." *Wind v. Barnhart*, 133 F. App'x 684, 687 n.1 (11th Cir. 2005).

Dr. Cucich diagnosed schizoaffective disorder, bipolar type, alcohol abuse,[6] and indicated that more information was needed before he could rule out post-traumatic stress disorder. Dr. Cucich also noted that Perez described an ability to understand, remember, and carry through simple instructions with only occasional difficulty, but that her poor memory made it difficult for her to follow complex instructions. Finally, Dr. Cucich assessed Perez's GAF at 50.

On November 17, 2004, Dr. David A. Williams, Ph.D., a state agency psychologist completed a psychiatric review of Perez based on her medical records. Dr. Williams diagnosed schizoaffective disorder, bipolar type, post-traumatic stress disorder, and alcohol abuse in remission. In completing a checklist-style form, Dr. Williams found that Perez had either insignificant or moderate limitations in all areas of mental functioning. In addition, Dr. Williams opined that Perez "can follow simple instructions, sustain ordinary routines and make simple work-related decisions; can respond appropriately to supervision, [and] coworkers but must have minimal to no interaction with the general public." (Admin. R. at 224.)

In addition to her mental impairments, Perez's medical records also indicate that she was diagnosed with microadenoma of the pituitary gland in July 2004, she underwent ear surgery for Meniere's disease in 1998, and she experienced mild incontinence in 2003.

In a report dated September 30, 2004, Perez stated that she spent her day doing

---

[6] Dr. Cucich indicated, however, that Perez had been sober for over a year prior to his examination.

chores, cooking, and running errands such as grocery shopping; she cared for her husband, children, and pets; she like to sew and participated in a bible study once a week; she could follow written instructions fairly well; and she got along with authority figures. (Admin. R. at 150-56). She stated that she had difficultly balancing a checkbook, following oral instructions, handling stress or changes in routine, and that she was paranoid at times. (Admin. R. at 153-56).

## Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards. *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

## Discussion

The Secretary has established a five-step evaluation process to determine whether a claimant is disabled for purposes of the Social Security Act. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing [her] past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

Following this process in this case, the ALJ determined at step two that Perez's schizoaffective disorder with paranoia, anxiety, and microadenoma of the pituitary gland all qualify as severe impairments. Then, after determining that Perez did not meet any of the listings at step three, the ALJ determined in step four that Perez retained the residual functional capacity (RFC) to "understand, remember and carry out simple instructions with no public contact." (Admin. R. at 22.) Based upon this RFC, determined that Perez could not perform her past relevant work. However, at step five, the ALJ found that Perez is not disabled because her impairments do not prevent her from finding work as a cleaner, housekeeper, sweeper, or commercial cleaner.

Perez presents three main arguments on appeal. First, she claims the ALJ erred by failing to discuss or consider the GAF scores that detract from his decision. Second, Perez argues that there is not substantial evidence to support the ALJ's credibility findings. Third, Perez claims the ALJ erred by finding that she could work as a commercial cleaner because this conclusion is inconsistent with the ALJ's finding that she could not perform any of her past work, which included work as a housecleaner.

1.   GAF Scores

In support of her first argument, Perez notes that the ALJ did not mention any of her lowest GAF scores, and thus erred in either failing to discuss this evidence or in failing to consider it.[7] Specifically, Perez argues that the ALJ should have noted that

---

[7] Notably, Perez does not argue that her GAF scores are medical opinions which trigger the ALJ's duty to consider all of the factors listed in 20 C.F.R. 404.1527(d).

Dr. Bradley assessed her GAF rating at 30 when she was admitted to the hospital in March 2003, and 45-50 when she was discharged in April 2003, and that Dr. Cucich gave her a 50 in November 2003. The ALJ only noted Perez's highest GAF scores, given by Dr. Snodgrass: 50-55 in June 2003, and 61 in November 2003.

An ALJ is required to demonstrate that he has considered all of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). In order to do so, "an ALJ is not required to discuss every piece of evidence" but he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as *significantly probative evidence he rejects.*" *Id.* at 1009-1010 (emphasis added); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (citing *Clifton*, 79 F.3d at 1009-1010).

Applying these standards to GAF scores in a series of unpublished decisions, the Tenth Circuit has repeatedly noted that, standing alone, low GAF scores may indicate problems unrelated to the ability to hold a job. *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004); *Eden v. Barnhart*, 109 F. App'x 311, 314 (10th Cir. 2004); *Zachary v. Barnhart*, 94 F. App'x 817, 819 (10th Cir. 2004); *Lopez v. Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003); *Oslin v. Barnhart*, 69 F. App'x 942, 947 (10th Cir. 2003).[8] Therefore, at least when a GAF score is unaccompanied by an opinion

---

[8] Although Perez's March 2003 GAF score of 30 is slightly lower than the scores involved in these cases, this distinction is not particularly significant because this score was increased by the same physician just a few weeks later to 45-50.

indicating that the claimant cannot work, the ALJ is not required to specifically discuss a low GAF score. *Compare Lopez*, 78 F. App'x at 678 (holding that where the examining physician did not indicate that claimant cannot work, the ALJ did not err by failing to discuss GAF score of 40 because the score was not "'significantly probative' evidence in opposition to the ALJ's ultimate conclusions") (citing *Briggs*, 248 F.3d at 1239), *with Oslin*, 69 F. App'x at 946-47 (holding that where treatment notes indicated that the claimant had "no sustained periods of improved functioning," and that he could not work or sustain a job, the ALJ erred by failing to fully discuss either these treatment notes or GAF scores of 45-55). *Cf. Zachary*, 94 F. App'x 819 (holding that ALJ was not required to discuss GAF score of 45 where he summarized the examining physician's report and gave no indication that he was rejecting the opinion).

In this case, none of the GAF scores that Perez points to were accompanied by an opinion that she could not work. And, while Dr. Cucich combined his rating of 50 with comments that could be interpreted as an opinion about Perez's work-related limitations, these comments are entirely consistent with the ALJ's RFC findings. Both the ALJ's findings and Dr. Cucich's notes indicate that Perez retains the capacity to understand, remember, and carry out simple instructions. Therefore, the ALJ did not err because the GAF scores do not qualify as "significantly probative evidence" that the ALJ rejected. *Clifton*, 79 F.3d at 1009.[9]

---

[9] In her opening brief, as she is discussing the GAF scores, Perez's attorney also makes a vague argument regarding her own mistake in providing the ALJ with some incorrect employment dates. (Opening Br., Docket No. 11, at 6-7.) Specifically, Perez's employment records demonstrate that she worked at Cottonwood Care Center from December 2003 through April of 2004. (Admin. R. at 66-68.) However, in

2.  Credibility

Perez next argues that there is not substantial evidence in support of the ALJ's credibility findings. This is a difficult argument to succeed on, since "[c]redibility determinations are peculiarly the province of the finder of fact," and will not be upset if they are supported by substantial evidence. *Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

In this case, the ALJ cited ample evidence in support of his credibility findings, including that Perez "perform[s] a wide range of daily activities such as cooking, cleaning, grocery shopping, and caring for young children at home, without any particular assistance." (Admin. R. at 22.) The ALJ also noted, among other things, that Perez plays on the computer, enjoys sewing, attends Bible classes, and is able to interact with her grandkids. *Id.*

---

response to a request from the ALJ, *id.* at 307-07, Perez's attorney wrote a letter incorrectly stating that Perez worked there from December 2004 through April 2005. *Id.* at 65. In his opinion, the ALJ twice used the dates from the attorney's letter, rather than the dates from the records she submitted. *Id.* at 18, 22.

Perez's attorney apparently believes that her own mistake, which she never corrected before, should be grounds for reversal because it *might* have had a significant impact on the ALJ's thinking. However, Perez never develops this argument. She does not provide anything beyond mere speculation as to the significance of this mistake. Moreover, she does not provide any authority or reasoned argument for why this type of mistake should be grounds for reversal. *See United States v. Deberry*, 430 F.3d 1294, 1301-1302 (10th Cir. 2005) ("The invited-error doctrine 'prevents a party who induces an erroneous ruling from being able to have it set aside on appeal.'" (quoting *United States v. Burson*, 952 F.2d 1196, 1203 (10th Cir. 1991))).

PDF Final                                                                                9

In challenging the ALJ's credibility findings, Perez does not dispute that there is evidence in the record to support the ALJ's comments. Rather, she merely points to evidence in the record such as her own testimony that, if fully credited, would demonstrate significant limitations. However, while substantial evidence review requires me to consider the *whole* record, I am not to reweigh the evidence or substitute my judgment for that of the ALJ. *Casias*, 933 F.2d at 800. Therefore, it is sufficient that a reasonable mind might accept the ALJ's given reasons as adequate to support his conclusion that Perez was exaggerating her claims of total disability. *Castellano*, 26 F.3d at 1028.

### 3. A Possible Contradiction in the ALJ's Findings

Finally, Perez argues that it is inconsistent for the ALJ to find that she cannot perform her past relevant as a housecleaner, and yet find that she can work as a commercial cleaner. As Perez admits in her brief, however, this error is likely harmless since the ALJ identified two other jobs that Perez could perform with her RFC. Indeed, Perez appears to merely raise this issue as "but another example of the lack of care that went into [the ALJ's] determination." (Opening Br., Docket No. 11, at 9.)

As Perez implicitly acknowledges, her argument, even if correct, does not provide a ground for reversal. In an appeal such as this one, my job is to determine whether the ALJ has demonstrated application of the correct legal principals, and to determine whether his determinations are supported by substantial evidence. *Castellano*, 26 F.3d at 1028. It is not to speculate as to whether the ALJ exercised a sufficient amount of care in reaching his decision.

## Conclusion

Based upon my review of the record of this case, I find that the ALJ's decision is supported by substantial evidence and there was no improper application of the law. Therefore, the ALJ's decision is affirmed.

DATED at Denver, Colorado, on September 19, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge